**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
Peter S. Pearlman, Esq.
psp@njlawfirm.com
Park 80 Plaza West – One
Saddle Brook, NJ 07663
Tel: (201) 845-9600
Fax: (201) 845-9423

**LYNCH LAW FIRM, P.C.**
Paul I. Perkins, Esq.
paulperkins@lynchlawyers.com
45 Eisenhower Drive, 3d Floor
Paramus, NJ 07652
Tel: (800) 656-9529
Fax:(888) 271-9726
*Attorneys for the Plaintiff and the Class*

| | |
|---|---|
| AL KOWALSKI d/b/a KOWALSKI PLUMBING AND HEATING, and MICHELLE WINICK d/b/a MICHELLE WINICK DESIGN, and MICHAEL GIDRO, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> -v <br><br> YELLOWPAGES.COM, LLC, <br><br> Defendant. | UNITED STATES DISTRICT COURT **DISTRICT OF NEW JERSEY** <br><br> **CIVIL ACTION NO. 09-2382 (PGS) – (ES)** |

**CERTIFICATION OF ROBERT LONG IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT, YELLOWPAGES.COM, LLC'S MOTION TO TRANSFER THIS ACTION TO THE UNITED STATES DISTRICT COURT OF NEW YORK**

**ROBERT LONG**, being of full age, hereby certifies:

1.      In October of 2008, I was employed as an sales account executive for

Yellowpages.com.

2. I was trained at a Yellowpages.com sales training center outside of Philadelphia, Pennsylvania. I trained to learn how to sell Yellowpages.com advertising.

3. As part of my training, I had to memorize a script that was authored by Yellowpages.com sales trainers. People who were training to become account executives were fired by the Yellowpages.com sales trainers if they could not memorize the script that we were given.

4. After training, I was sent to a New York office and sold Yellowpages.com advertising in the area of Long Island, New York.

5. I worked very hard for Yellowpages.com and eventually became one of the top salesmen for Yellowpages.com. It is my understanding that I was, for a period of time, in the top 10% of the top Yellowpages.com salespeople in the United States.

6. I have been advised that Yellowpages.com has filed a motion seeking to enforce the venue clause contained in its Terms and Conditions For Internet Advertising ("Terms and Conditions").

7. I was never told by any of the Yellowpages.com Sales Trainers that we were to acknowledge the presence of the Terms and Conditions prior to a potential customer signing a contract with Yellowpages.com.

8. In fact, during the sales presentation to the potential customer we never mentioned the terms and conditions. The presentation of the Terms and Conditions is not part of the memorized script.

9.  As a matter of practice, the Terms and Conditions are never mentioned, presented, or shown to the potential customers prior to the customer signing up.

10. When the potential customer signs up with Yellowpages.com they are to sign the screen on a laptop signifying their assent to purchase advertising.

11. When the potential customer sees the screen, there is never any reference to the Terms and Conditions. All they see is how much the advertising will cost on a monthly basis and the space for the potential customer to sign.

12. After the customer signs the laptop screen, we were instructed to turn the laptop back so it is facing us and the customer will not see that there are multiple pages to the document.

13. It is only after they sign the screen that a copy of the Terms and Conditions are emailed to the customer.

14. When the customer receives the paperwork from Yellowpages.com, right above their signature is a paragraph that states "you [the customer] have received and had an opportunity to review a copy of the TERMS AND CONDITIONS FOR INTERNET ADVERTISING" however, this statement is incorrect because when the potential customer signs the laptop screen, they cannot see this wording.

15. None of the potential customers are ever made aware of the fact that there is a clause in the contract stating that they must sue Yellowpages.com in New York.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on this 28th day of February, 2010.

Robert Long