**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
Peter S. Pearlman, Esq.
psp@njlawfirm.com
Park 80 Plaza West – One
Saddle Brook, NJ  07663
Tel: (201) 845-9600
Fax: (201) 845-9423

**LYNCH LAW FIRM, P.C.**
Paul I. Perkins, Esq.
paulperkins@lynchlawyers.com
45 Eisenhower Drive, 3d Floor
Paramus, NJ  07652
Tel: (800) 656-9529
Fax:(888) 271-9726
*Attorneys for the Plaintiff and the Class*

| | |
|---|---|
| AL KOWALSKI d/b/a KOWALSKI PLUMBING AND HEATING, and MICHELLE WINICK d/b/a MICHELLE WINICK DESIGN, and MICHAEL GIDRO, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>-v<br><br>YELLOWPAGES.COM, LLC,<br><br>          Defendant. | UNITED STATES DISTRICT COURT **DISTRICT OF NEW JERSEY**<br><br>**CIVIL ACTION NO. 09-2382 (PGS) – (ES)** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER THIS ACTION TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

## TABLE OF CONTENTS

I.   INTRODUCTION.................................................................  7

II.  RELEVANT FACTS............................................................  8

    a.  Defendant's Pattern Of "Hard-Sell" Sales Techniques..............  8

    b.  Defendant Provided No Notice Of The Terms
       And Conditions And Employed Fraudulent And
       Overreaching Techniques To Induce Plaintiffs Into
       Agreeing To The New York Venue Clause............................9

        i.   Winick Received No Notice Of The Existence of
           The Forum Selection Clause Embedded In
           The Terms And Conditions......................................12

        ii.  Kowalski Was Defrauded Into Allegedly Agreeing
           To The Forum Selection Clause................................ 12

        iii. Similarly, Gidro Was Defrauded Into Purportedly
           Agreeing To The Forum Selection Clause......................14

III. DEFENDANT'S MOTION TO TRANSFER THIS ACTION
     SHOULD BE DENIED..........................................................14

    a.  The Legal Standard.........................................................14

    b.  The Forum Selection Clause Contained In The
       Terms And Conditions Is Unenforceable.............................. 16

    c.  Plaintiffs' NJCFA Claim Is Not Brought "Under"
       Nor Does It "Relate To" The Terms and Conditions
       And The Order Form; Thus, The Forum Selection
       Clause Does Not Apply................................................. 23

    d.  The Relevant Section 1404(a) Factors Weigh  Heavily
       In Favor Of Denying Defendant's Motion To Transfer............  25

        i.   The Relevant Private Interest Factors Support
           Denying Defendant's Motion To Transfer...................  26

ii.    The Relevant Public Interest Factors Sway
Decisively In Favor Of Denying
Defendant's Request To Transfer This Action............... 29

**IV.**    **CONCLUSION** ..................................................... 34

## **TABLE OF AUTHORITIES**

### **Statutes and Rules**

28 U.S.C. §1404(a) ………………………………………………………   7, 14

New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8–1 *et seq*……………   7, 33

*N.J. Court Rule* 1:36–3…………………………………………………..   33


### **Cases**

*Byrd v. Johnson*, 2007 WL 4373047 (E.D. Pa. 2007), *5……………………...   15

*Calkins v. Dollarland, Inc.*, 117 F. Supp. 2d 421, 428 (D.N.J. 2000)…………...   27

*Carnival Cruise Lines, Incorporated v. Shute*, 499 U.S. 585 (1991)……………   16-17

*Cornish v. Morris Communication Co., LLC*, 2009 WL 3129387, *3 (D.N.J.
2009)……………………………………………………………………..   27

*Cox v. Sears Roe Buck & Company*, 138 N.J. 2, 17,
647 A. 2d 454, 462 (1994) …………………………………………………22, 30

*Crescent Intern, Inc. v. Avatar Communities, Inc.* 857 F.2d 943, 944
(3d Cir. 1988)………………………………………………………………...   24, 26

*Cruz v. NYNEX Information Resources*, 263 A.D.2d 285, 290,
703 N.Y.S. 2d 103 (N.Y. App. Div. (1st Dept.) 2000)…………………………   30

*Dibsie v. Gulf Stream Coach, Inc.*, 2008 WL 2230658, *5 (D.N.J. 2008)…………15, 26,
                                                                                                                                        32-34

*Double J. Enterprise, Incorporated v. V&H, Incorporated*,
2007 WL 1541980 (N.J. Super. A.D. 2007) ……………………………………   31-32

*Effron v. Sun Line Cruises, Inc.*, 67 F. 3d 7, 9 (2d Cir. 1995)…………………   17

*Epps v. I.I.L., Inc.*, 2007 WL 4463588, *4–5 (E.D. Pa. 2007) ……………………   19

*Finance One Public Co. Ltd. v. Lehman Bros. Spec. Financing, Inc.*,
414 F. 3d 325, 335 (2d Cir. 2005)……………………………………………   30

*Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 604,
691 A.2d 350, 364 (N.J. Sup. 1997)…………………………………………..   29

*Hallowell v. Blue Haven Pools National Incorporated*,
2005 WL 2648870 (N.J. Super A.D. 2005)............................................. 31

*Hodgson v. Gilmartin*, 2006 WL 2707397, *16 (E.D. Pa. 2006)..................... 32

*Jewish Center of Sussex County v. Whale*, 86 N.J. 619, 624,
432 A.2d 521, 524 (N.J. Sup. 1981)....................................................... 22

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.1995)...................... 14-15,
17, 33

*Lettenmaier v. Lube Connection, Inc.*, 162 N.J. 134, 138–39,
741 A.2d 591, 593–94 (N.J. Sup. 1999) ................................................. 29

*Mathews v. Rescuecom Corporation*, 2006 WL 414096 (D.N.J. 2006)............. 31-32

*M.G.J. Industries v. Greyhound Financial Corp., Inc.*,
826 F. Supp. 430, 432 (M.D. Fla. 1993)................................................. 20

*M/S Bremen v. Zapata Off-Shore Company*, 407 U.S. 1, 15 (1972).................. 16

*Muhammad v. County Bank of Rehoboth Beach, Delaware*,
189 N.J. 1, 912 A.2d 88 (N.J. Sup. 2006) ............................................... 31

*New Jersey Economic Development Authority v. Pavonia Restaurant, Inc.*,
319 N.J. Super. 435, 446, 725 A.2d 1133, 1139 (N.J. Super. A.D. 1998)............ 22

*O'Brien v. Okemo Mountain, Inc.*, 17 F. Supp. 2d 98 (D. Conn. 1998)............... 17-18

*Palladin Partners v. Gaon*, 2006 WL 2460650, *16 (D.N.J. 2006) .................. 30

*Pentecostal Temple Church v. Streaming Faith, LLC*,
2008 WL 4279842 (W.D. Pa. 2008)....................................................... 23

*Phillips v. Audio Active Ltd.*, 494 F. 3d 378, 391 (2d Cir. 2007)..................... 24-25

*Plum Tree, Inc. v. Stockment*, 488 F. 2d 754, 757 (fn. 5) (3d Cir. 1973)............. 20, 26

*Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (fn. 14) (1974).................... 20-21

*Schwartz v. Comcast Corp.*, 256 Fed. Appx. 515 (3d Cir. 2007).................... 19

*Shutte v. Armco Steel Corp.*, 431 F. 2d 22, 25 (3d Cir. 1970)........................ 26

*Silvestri v. Italia Societa Per Azioni Di Navigazione,* 388 F.2d 11 (2d Cir. 1968).  17-18

*Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 23, 29 (1988) ...................   14, 17

*Telebrands Direct Response Corp. v. Ovation Communications, Inc.,*
802 F. Supp. 1169, 1175 (D.N.J. 1992) ...............................................   27

*Van Ommeren Bulk Shipping, B.V. v. Tagship, Inc.,*
821 F. Supp. 848, 850 (D. Conn. 1993) ...............................................   27

*Viking Yacht Co. v. Composites One LLC,* 496 F. Supp. 2d 462, 474
(D.N.J. 2007) ...............................................................................   30

*Watts v. Jackson Hewitt Tax Service Inc. et al.,*
579 F. Supp. 2d 334, 345 (E.D.N.Y. 2008)............................................   29

## **Treatises**

15 WRIGHT, MILLER & COOPER § 3854, at 470.................................   29

## I.      INTRODUCTION

Defendant Yellowpages.com, LLC ("Defendant") moves to transfer this action pursuant to 28 U.S.C. §1404(a) to the United States District Court for the Southern District of New York.  Because substantially all of the factors which this Court must consider in deciding such a motion, to the extent they are applicable to this case, weigh heavily against transfer, Defendant seeks to sustain its heavy burden by relying exclusively upon a forum selection clause appearing in a document referred to as the Terms And Conditions For Internet Advertising ("Terms and Conditions").  However, none of the plaintiffs in this action (individually a "Plaintiff" and collectively, "Plaintiffs") received or had notice of the Terms and Conditions, including, therefore, the forum selection clause, until after they purportedly entered into and were bound by the contract containing those terms.

This putative class action, brought under the New Jersey Consumer Fraud Act, New Jersey Statute Annotated Section 56:8–1 *et seq.* ("NJCFA"), seeks damages on behalf of a class (the "Class") consisting of all persons or entities in the State of New Jersey that allegedly contracted with Defendant for advertising services from and after May 1, 2005 ("Class Members"). It asserts, among other things, that in soliciting business from the Plaintiffs and the other Class Members,[1] Defendant fraudulently induced them into providing their assent to a truncated order form titled "Contract for Internet YellowPages.com Advertising" (the "Order Form") which omitted entirely any reference to the Terms and Conditions.  Only after the Class Members were deceived into providing their assent to the Order Form did Defendant provide a complete version of the

---

[1]  Unless stated to the contrary, all references hereafter to the term Class Members includes the Plaintiffs.

Order Form that incorporated the Terms and Conditions by reference.  Embedded in the Terms and Conditions, in 5½-point font, is a clause purporting to make venue for all disputes brought "under" or "relating to [the] Agreement" mandatory in New York, New York.

In its dealing with the Class Members, and in its motion to transfer, Defendant claims that the Order Form and the Terms and Conditions jointly form a binding agreement containing an enforceable forum selection clause.  In fact, as Plaintiffs have alleged, and as the Declaration of Robert Long, a former salesperson for Defendant demonstrates, the Class Members are never made aware of the existence of the Terms and Conditions prior to their alleged assent, and as a matter of practice, Defendant's salespeople were never told to present, mention, or show the Terms and Conditions to the Class Members prior to obtaining their alleged assent to Defendant's agreement. As discussed in detail below, the forum selection clause is unenforceable because Plaintiffs had no notice of the clause, and they were induced to provide their assent to the Order Form based on Defendant's overreaching and fraudulent sales techniques.

## II.    RELEVANT FACTS

### a.  Defendant's Pattern Of "Hard-Sell" Sales Techniques.

As set forth in detail in the First Amended Complaint ("FAC") (Doc. No. 16), each of Defendant's salespeople is trained to "hard-sell" Defendant's products.[2]  (*See* Declaration of Robert Long in Support of Plaintiffs' Opposition to Defendant's Motion to Transfer This Action to The United States District Court For The Southern District of New York ("Long Dec."), ¶¶ 1–2).  After an intense training, Defendant's sales force is

---

[2]  Unless stated to the contrary, all references to "¶" refer to the corresponding paragraph in the FAC.

instructed to work from a compulsory scripted sales presentation from which there is no deviation (the "Scripted Presentation").   (*Id.*).   All of Defendant's salespeople must memorize the Scripted Presentation in training or they are fired.   (Long Dec., ¶ 2).

### b. Defendant Provided No Notice Of The Terms And Conditions And Employed Fraudulent And Overreaching Techniques To Induce Plaintiffs Into Agreeing To The New York Venue Clause.

Neither the Plaintiffs, Al Kowalski d/b/a Kowalski Plumbing ("Kowalski"), Michelle Winick d/b/a Michelle Winick Design ("Winick") and Michael Gidro d/b/a Law Offices of Michael Gidro ("Gidro"), nor the other Class Members were provided with the Terms and Conditions until after they had committed to the document which Defendant insists contractually bound them.   (*See* Declaration of Cheryl D'Elia ("D'Elia Dec."), ¶ 4; Declaration of Craig De Vito ("De Vito Dec."), ¶¶ 7 and 8; Declaration of Al Kowalski in Support of Plaintiffs' Opposition to Defendant's Motion to Transfer This Action to The United States District Court For The Southern District of New York ("Kowalski Dec."), ¶¶ 14 and 16; Declaration of Michelle Winick in Support of Plaintiffs' Opposition to Defendant's Motion to Transfer This Action to The United States District Court For The Southern District of New York ("Winick Dec."), ¶¶ 4–7; Declaration of Michael Gidro in Support of Plaintiffs' Opposition to Defendant's Motion to Transfer This Action to The United States District Court For The Southern District of New York ("Gidro Dec."), ¶¶ 5-7).

The Declaration of Robert Long, a former top salesperson of Defendant, sets forth the following relevant facts:

- Defendant's salespeople are required to memorize the Scripted Presentation;

- Defendant's salespeople, as a matter of practice, do not present, explain, or show the Terms and Conditions prior to Class Members giving their alleged assent to the Order Form;

- When the Class Member signs the laptop screen signifying their alleged assent to the Order Form, there is no reference to the Terms and Conditions that can be seen by the Class Member; and

- The Class Member is unaware of the Terms and Conditions until after s/he has provided his or her alleged assent.

(Long Dec. ¶¶ 2–13).

Class Members were defrauded into signing (or indicating assent electronically by checking a box next to the words "OK" to) an abbreviated version of the Order Form on a salesperson's personal digital assistant or laptop computer that displayed no reference to the Terms and Conditions.  (D'Elia Dec., ¶ 4 ("My computer is designed so that, as soon as he signed and approved the contract, a complete contract was then e-mailed to his e-mail address."); (Gidro Dec., ¶ 5-7; Winick Dec., ¶ 4–7; Long Dec., ¶¶ 5–13).  Only after the Class Member provided their purported assent to the Order Form did the Defendant provide the full-length Order Form and the Terms and Conditions containing the forum selection clause.  (*See* Defendant's Memorandum Of Law In Support Of Motion To Transfer This Action To The United States District Court For The Southern District Of New York ("Defendant's Memorandum of Law"), pp. 4–5; D'Elia Dec., ¶ 4).  A clause in 5½-point font in the full-length Order Form provides that:

> This contract consists of and is governed by this Insertion Order pages [unreadable] hereto <u>and in the Terms and Conditions for</u>

> Internet Advertising, all of which are incorporated herein by
> reference.    By signing below you are representing to
> Yellowpages.com:  (1) that you have *received and had an
> opportunity to review* a copy of the TERMS AND
> CONDITIONS FOR INTERNET ADVERTISING; (2) that they
> have the same force and effect as if given in full text on this
> document, and (3) that you acknowledge that [*sic*]
> YellowPages.com's reliance upon your acceptance of them;
> however the version applicable to this contract shall be the latest
> dated version as of the date of your signature.  You agree that
> you give authority to bind the individual or company purchasing
> this advertising in all respects to this contract and the
> incorporated terms and conditions.

(Emphasis added; D'Elia Dec., Exhs. A and B).   The above-quoted clause was never

shown to the Plaintiffs before their alleged assent to the Order Form was obtained.

(Winick Dec., ¶ 4–7; Gidro Dec., ¶ 5-7; Long Dec. ¶¶ 5–13).

   The Terms and Conditions also was printed in approximately 5½-point font.

(D'Elia Dec., Exhs. A and B).  The second to last paragraph of the Terms and Conditions

is entitled "Applicable Law." (D'Elia Dec., Exhs. A and B).  Paragraph 18 provides:

> **18. Applicable Law.** This Agreement shall be governed
> by and construed and enforced in accordance with the
> laws of the State of New York applicable to contracts
> entered into and performed in New York by residents
> thereof. Any action or proceeding brought by you under or
> relating to this Agreement shall be brought in a state or
> federal court located in the City of New York, State of
> New York, and you hereby irrevocably submit to the
> personal jurisdiction of and irrevocably consent to venue
> in such courts for purposes of any such action or
> proceeding. Any claim against us arising from this
> Agreement shall be adjudicated on an individual basis, and
> shall not be consolidated in any proceeding with any claim
> or controversy by any other party.

(Emphasis added; *Id.*).

i.   **Winick Received No Notice Of The Existence Of The Forum Selection Clause Embedded In The Terms And Conditions.**

Winick is a New Jersey resident. (Winick Dec., ¶ 1). Defendant's salesperson Craig De Vito ("De Vito") has worked from Defendant's Morristown, New Jersey office since his employment with Defendant commenced on February 9, 2009. (De Vito Dec., ¶ 2).

During August of 2009, De Vito visited Winick at her design studio in Little Falls, New Jersey on two occasions. (De Vito Dec., ¶¶ 3 and 5). At the conclusion of De Vito's second visit, De Vito showed Winick a truncated Order Form that contained no reference to the Terms and Conditions. (Winick Dec., ¶ 4). Winick provided her assent to the Order Form by signing an electronic signature box on De Vito's laptop. (Winick Dec., ¶ 5; De Vito Dec., ¶ 7). Winick never knew of the existence of the Terms and Conditions until after she had allegedly committed herself to the agreement with Defendant. (Winick Dec., ¶ 6). As set forth in the Declaration of Michelle Winick, De Vito did not have a printer with him and had no ability to print out any documents and, as such, she was never left a hardcopy of any agreement. (Winick Dec., ¶ 5). It was not until several days later that De Vito provided Winick with a "complete" Order Form that incorporated by reference the Terms and Conditions. (De Vito Dec., ¶ 8; Winick Dec., ¶ 7).

ii.   **Kowalski Was Defrauded Into Allegedly Agreeing To The Forum Selection Clause.**

Kowalski is a New Jersey resident. (Kowalski Dec., ¶ 1). On October 31, 2008, he spoke with Defendant's salesperson Royce Brown ("Brown") by telephone regarding potential advertising services. (Kowalski Dec., ¶¶ 2 and 3). In particular, Kowalski

requested the cost of the advertising services pitched by Brown. (Kowalski Dec., ¶ 4). In response, Brown represented that he did not have the cost of the services, but that he would send Kowalski the information requested. (Kowalski Dec., ¶ 5). Brown further explained that he must first record Kowalski's asset to the Terms and Conditions, the content of which was entirely undisclosed to Kowalski. (Kowalski Dec., ¶ 5).

When Kowalski stated that he first wanted to review the agreement, Brown represented that obtaining Kowalski's consent was purely "procedural" and that he would have the opportunity to evaluate the terms of the deal later. (Kowalski Dec., ¶¶ 6 and 7). During that recorded conversation, Brown asserted that Kowalski had agreed to certain terms and conditions they had discussed. (Kowalski Dec., ¶ 8). When Kowalski responded that he had not agreed to any terms or conditions, nor had any been discussed, Brown ceased the recording. (Kowalski Dec., ¶¶ 8 and 9). The recording was subsequently commenced after Brown represented to Kowalski that the only way Brown could provide the pricing information Kowalski sought was for Kowalski to agree with every statement Brown set forth. (Kowalski Dec., ¶ 9). Brown further represented to Kowalski that he would receive everything in writing and would be able to review the terms (and accept or reject them) after receiving the documents. (Kowalski Dec., ¶ 12).

Kowalski later received the Order Form and the Terms and Conditions, which purported to be binding on Kowalski. (Kowalski Dec., ¶ 14). During his conversation with Brown, Brown had never mentioned the Terms and Conditions. (Kowalski Dec., ¶¶ 11 and 13). Kowalski did not sign the Order Form and he never returned either the Order Form or the Terms and Conditions to Brown. (Kowalski Dec., ¶ 17).

Defendant has not submitted a declaration from Brown. (Defendant's Memorandum of Law, p. 1).

### iii.   Similarly, Gidro Was Defrauded Into Purportedly Agreeing To The Forum Selection Clause.

Gidro is a resident of New Jersey. (Gidro Dec., ¶ 1). Gidro is also an attorney who practices bankruptcy law in this state. (Gidro Dec., ¶1-2). On or about September 15, 2008, Gidro met with Defendant's salesperson Cheryl D'Elia ("D'Elia") at Gidro's place of business in Teaneck, New Jersey. (Gidro Dec., ¶ 2-3; D'Elia Dec., ¶3). Following the Scripted Presentation, Gidro was shown a truncated Order Form that contained no reference to the Terms and Conditions. (Gidro Dec., ¶ 5-7; D'Elia Dec., ¶ 4). Gidro provided his alleged assent to the incomplete Order Form by signing an electronic signature box on D'Elia's laptop computer. (Gidro Dec., ¶5-7; D'Elia Dec., ¶ 4). At no point before signing the electronic signature box was Gidro informed of the existence of the Terms and Conditions. (Gidro Dec., ¶ 5-7).

### III.   DEFENDANT'S MOTION TO TRANSFER THIS ACTION SHOULD BE DENIED

#### a.   The Legal Standard.

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The court is given broad discretion in deciding a motion to transfer pursuant to Section 1404(a), the exercise of which requires an "individualized, case-by-case consideration of convenience and fairness" with a view toward determining whether the interests of justice will be served

by the transfer. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 23, 29 (1988); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.1995). The burden is on the movant to establish the need for a transfer. *Jumara,* 55 F.3d at 879. Moreover, "all reasonable inferences must be drawn in favor of the party opposing the transfer." *Byrd v. Johnson,* 2007 WL 4373047 (E.D. Pa. 2007), *5.

The many non-exclusive relevant factors a court must consider in its analysis generally are divided into so-called "private factors" and "public factors." The private factors, those relating to the parties themselves, include the plaintiff's forum preference; the defendant's forum preference; whether the claim arose elsewhere; the convenience of the parties based upon a number of factors, including their relative economic condition; the convenience of witnesses, to the extent they may be unavailable for trial in one of the fora; and the location of books and records, also to the extent they may be unavailable in one of the fora. *Jumara,* 55 F.3d at 879.

The public factors, those which relate to the interest of the public, include: enforceability of the judgment; practical considerations that could expedite or slow the litigation and/or make it more or less cumbersome and expensive; docket congestion in the fora; the local interest in deciding local controversies at home; and the familiarity of the forum bench with applicable state law. *Id.* at 879–80.

Because Defendant relies exclusively on the forum selection clause in support of its motion, that issue will be addressed directly. In fact, it is simply part of the overall consideration of the parties' choice of forum — the first two private factors. *Id.* at 880. While forum selection clauses are entitled to "substantial consideration" in deciding a Section 1404(a) motion, they are not entitled to "dispositive weight." *Dibsie v. Gulf*

*Stream Coach, Inc.*, 2008 WL 2230658, *5 (D.N.J. 2008) (quoting *Jumara* at 880). And in this case, the forum selection clause is entitled to no weight.

### b. The Forum Selection Clause Contained In The Terms And Conditions Is Unenforceable.

Here, as set forth in Section II above, Defendant fraudulently withheld the very existence of the Terms and Conditions from the Plaintiffs. It cannot be said that Plaintiffs voluntarily agreed to the forum selection clause where they were unaware of it. This point was made repeatedly by the United States Supreme Court in *Carnival Cruise Lines, Incorporated v. Shute*, 499 U.S. 585 (1991), where the Court in upholding a forum selection clause felt it necessary to express, on no less than three occasions, that the plaintiffs there were aware of the clause at the time they entered into the agreement: "we do not address the question whether respondents had sufficient notice of the forum clause before entering the contract for passage. Respondents essentially have conceded they had notice of the forum selection provision." *Id.* at 590; "because respondents do not claim lack of notice of the forum clause, we conclude that they have not satisfied the 'heavy burden of proof' required to set aside the clause on grounds of inconvenience" (internal citation omitted). *Id.* at 595; "respondents have conceded that they were given notice of the forum provision and, therefore, presumably retained the option of rejecting the contract with impunity." *Id.* In contrast, the requirement of knowing acceptance is totally absent here.[3]

Defendant's practices are not only fraudulent and overreaching, rendering the venue clause invalid and thus unenforceable, *M/S Bremen v. Zapata Off-Shore Company*,

---

[3] Even a cursory review of basic principals of contract formation reveals that Defendant's contract is procedurally unconscionable due to the element of unfair surprise. WILLSTON-CN § 18:12; *see e.g.*, Sitogum Holdings, Inc. v. Ropes, 352 N.J.Super. 555, 800 A.2d 915 (N.J. Super. 2002).

407 U.S. 1, 15 (1972), they negate the precise legal presumption on which Defendant's argument stands: that the forum selection clause represents a manifestation of the Plaintiffs' conscious and deliberate choice of forum.[4]   *Stewart*, 487 U.S. at 29–30; *Jumara*, 55 F.3d at 880.

The validity of a venue selection clause in a contract of adhesion, like Defendant's, depends on whether the existence of the clause was reasonably communicated to the plaintiff. *Effron v. Sun Line Cruises, Inc.*, 67 F. 3d 7, 9 (2d Cir. 1995) (stating in dicta that the legal effect of a forum selection clause depends in the first instance upon whether its existence was reasonably communicated to the plaintiff); *Carnival Cruise Lines,* 499 U.S. at 595 (upholding a forum selection clause because the plaintiffs conceded they had received notice of the clause); *O'Brien v. Okemo Mountain, Inc.*, 17 F. Supp. 2d 98 (D. Conn. 1998) (insufficient notice was found where the forum

---

[4]   Defendant relies on *M/S Bremen* and *Carnival Cruise Lines* for the appropriate legal standard for the enforceability of the forum selection clause in this case. That reliance is misplaced, however, as neither case was decided pursuant to 28 U.S.C. §1404(a) and both cases apply admiralty law. As the Supreme Court acknowledged in *Stewart Organization,* while *M/S Bremen* may be instructive, federal common law developed under admiralty jurisdiction does not transfer freely to other settings. *Stewart,* 487 U.S. at 28–29. Indeed, the flexible principles of *forum non conveniens* on which Section 1404(a) is based are not part of admiralty jurisprudence. *Id.* at 29.

Further, Defendant provides two string citations in support of its argument that "[n]umerous decisions of the Third Circuit and this Court have enforced forum selection clauses." (Defendant's Memorandum of Law, p. 11, fn. 2 and 3). Each Third Circuit case cited by Defendant, however, involves issues divergent from those at hand. *Wall Street Aubrey Golf, LLC v. Aubrey*, 189 Fed. Appx. 82 (3d Cir. 2006), an unpublished decision, addressed the argument that the venue selection clause was permissive; however, the issue of the validity of the clause was not before the court. In *Salovaara v. Jackson National Life Insurance Company*, 246 F. 3d 289 (3d Cir. 2001), the issue before the court was the scope of the clause and, again, not its validity. *Hays and Company v. Merrill Lynch, Pierce, Fenner & Smith, Incorporated,* 885 F.2d 1149 (3d Cir. 1989) involved the enforcement of an arbitration clause where there were no allegations of fraud or overreaching in connection with the inclusion of the clause in the parties' contract. In *Coastal Steel Corporation v. Tilghman Wheelabrator Ltd..*, 709 F. 2d 190 (3d Cir. 1983), the issues of notice, fraud, and overreaching were never raised by the plaintiff. *Jumara v. State Farm Insurance Company* and *Crescent International Incorporated v. Avatar Communities, Incorporated* are discussed separately in the body of Plaintiff's brief.

Finally, as discussed in detail in Section III(B), the venue clause at issue here is not valid. Thus, the legal authorities cited by Defendant from this Court are also inapplicable because not one of the cases cited involves challenges to the validity of a forum selection clause.

selection clause was printed in small font on the back on the plaintiff's lift ticket which was affixed to skier's jacket); *Silvestri v. Italia Societa Per Azioni Di Navigazione*, 388 F.2d 11 (2d Cir. 1968) (notice regarding the period in which the plaintiff could file suit was insufficient where the clause was embedded in a passenger ticket which bore the heading "passenger contract" in upper right-hand corner and in the upper left-hand corner stated that it was subject to conditions printed on cover of ticket which formed part of contract).

In *O'Brien*, the plaintiff was a skier and a customer of the defendant ski resort. 17 F. Supp. 2d at 100. There, the defendant sought to enforce a forum provision printed on the back of the plaintiff's ski ticket, making venue proper in Vermont. *Id.* at 102. In denying the motion to transfer venue, the court focused on the fact that the clause was placed near the bottom of the backside of the ticket, the clause was printed in very small typeface with only a single word capitalized and the front of the ticket contained no instructions to read the backside. *Id.* at 103. The *O'Brien* court concluded that such factors, coupled with the affixing of the ticket on the skier's jacket, distinguished the forum clause from clauses in passenger cruise tickets which have been held as providing adequate notice. *Id.*

In *Silvestri*, the court denied the defendant's motion to enforce a clause in the parties' agreement where the contract purported to incorporate terms located elsewhere on the plaintiff's ticket and contained 35 numbered paragraphs in very small type. *Silvestri*, 388 F.2d at 14. Notably, although the ticket in that case contained space for the plaintiff's signature, it was never signed. *Id.*

Here, the facts are even more egregious than in *O'Brien* or *Silvestri* because the Class Members received no notice of the forum selection clause. In fact, Defendant purposely withheld the existence of the Terms and Conditions from Plaintiffs until after they had been deceived into providing their assent to the abbreviated Order Form. (Kowalski Dec. ¶¶ 6–8, 11–14, 16; Winick Dec., ¶¶ 4–7, Gidro Dec., ¶¶5-7; Long Dec., ¶¶ 5–13). Courts have found notice of a forum selection clause inadequate not only where the clause was hidden in small font but, more importantly, where the contract was truncated so as to exclude the forum selection clause entirely. *Epps v. 1.I.L., Inc.*, 2007 WL 4463588, *4–5 (E.D. Pa. 2007) (holding the clause unenforceable due to lack of adequate notice and denying motion to dismiss for improper forum). That is exactly the case here where the Order Form shown and agreed to by Plaintiffs (and the other Class Members) was abbreviated to contain no reference to the venue clause in the Terms and Conditions.

In its noticeably brief discussion of this issue in the body of its brief, Defendant cites to only one case. However, defendant's case, addressing an arbitration clause, is readily distinguishable on its facts. *See Schwartz v. Comcast Corp.*, 256 Fed. Appx. 515 (3d Cir. 2007). In stark contrast to the facts here, the defendant in *Schwartz* presented credible evidence of its consistent practice of delivering subscription agreements to all new customers, including the plaintiff, and evidence of the parties' conduct demonstrating that the plaintiff was aware that the services he accepted were offered pursuant to a subscription agreement that was available to him online. *Id.* 519–520. Here, to the contrary, Defendant has presented no evidence that Class Members were made aware of the existence of the Terms and Conditions prior to providing their

purported assent to the Order Form, (Defendant's Memorandum of Law, pp. 4, 13), and Plaintiffs have presented substantial evidence to the contrary.

In fact, Defendant scrupulously avoids the issue of when the Plaintiffs learned of the Terms and Conditions, stating merely that "although each of the named Plaintiffs agreed to their advertising contracts with Yellowpages.com under unique circumstances, all were provided with the Terms and Conditions . . . ." (Defendant's Memorandum of Law, p. 4).  In a footnote, Defendant purports to provide legal support for its motion by asserting that several state and federal courts have enforced the "very same forum selection clause at issue here . . . ." (Defendant's Memorandum of Law, p. 11, ft. 4). While Defendant may have used the same clause with other consumers, the decisions cited by Defendant either do not involve any allegation of lack of notice, fraud or overreaching or are merely orders containing no supporting explanation or analysis. (*See* Declaration of Michael J. Fekete, Esq. ("Fekete Dec."), Exhs. B–F).

The law is plain, however, that where appropriate evidence is provided to the court demonstrating that a forum selection agreement is effected by fraud, undue influence, or overweening bargaining power, the court should refuse to enforce its provisions.  *Plum Tree, Inc. v. Stockment*, 488 F. 2d 754, 757 (fn. 5) (3d Cir. 1973) (vacating the district court's order transferring action); *M.G.J. Industries v. Greyhound Financial Corp., Inc.*, 826 F. Supp. 430, 432 (M.D. Fla. 1993) (disregarding a forum selection clause procured by fraud where overreaching sales techniques, included obtaining consent to contractual terms by threatening loss of the consumer's deposit). Plaintiffs acknowledge the demonstrated fraud must be in connection with the inclusion of the forum selection clause in the contract.  Here, each and every clause in the Terms

and Conditions, including the venue clause, in this case was withheld from Plaintiffs by, and only agreed to by them on account of, Defendant's fraud. *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (fn. 14) (1974) (noting *Bremen's* holding that a clause will be unenforceable if the inclusion of that clause was the product of fraud).

Fraud in its general and fundamental conception involves the "obtaining of an undue advantage by means of some act or omission that is unconscientious or a violation of good faith." *Jewish Center of Sussex County v. Whale*, 86 N.J. 619, 624, 432 A.2d 521, 524 (N.J. Sup. 1981). Fraud may be actual or constructive — both are present here —; the distinguishing factor being the element of untruth between the parties required in the former but not the latter. *Id.* at 524. A misrepresentation which amounts to actual fraud requires a material misrepresentation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by that party to his detriment or the omission of a material fact, knowing the other party is unaware of that fact. *Id.*; *see also New Jersey Economic Development Authority v. Pavonia Restaurant, Inc.*, 319 N.J. Super. 435, 446, 725 A.2d 1133, 1139 (N.J. Super. A.D. 1998) (stating in dicta that the deliberate suppression of a material fact that should be disclosed is equivalent to a material misrepresentation).

Here, Defendant withheld the existence and provisions of the Terms and Conditions, knowing the Plaintiffs were ignorant of the existence of that document and its contents while intending to bind them to it. This is a paradigmatic material omission with intent to defraud. *Jewish Center of Sussex County*, 86 N.J. at 624. Indeed, Defendant is well aware of the falsity of its representations because its statements are made in circumstances where it knows the Class Member are agreeing blindly to undisclosed

contractual terms. *Id.* To the extent reliance is required — and it is not under the NJCFA, *Cox v. Sears Roe Buck & Company*, 138 N.J. 2, 17, 647 A. 2d 454, 462 (1994) (a practice can be unlawful under the NJCFA even if no one was in fact misled or deceived), it is evidenced by the fact that the Class Member agreed to purchase Defendant's advertising services.

Defendant's salespersons also perpetrated a constructive fraud on Class Members by their use of the truncated Order Form that excluded all reference to the Terms and Conditions. (D'Elia Dec., ¶ 4; De Vito Dec., ¶ 8; Long Dec. ¶¶ 5–13; Gidro Dec., ¶¶ 5-7; Winick Dec., ¶¶ 5–7); *Jewish Center of Sussex County*, *supra*, 86 N.J. at 624. Defendant does not dispute its use of the abbreviated Order Form. (D'Elia Dec., ¶ 4; De Vito Dec., ¶ 8).

The fraud perpetrated by Defendant distinguishes this matter sharply from *Pentecostal Temple Church v. Streaming Faith, LLC*, 2008 WL 4279842 (W.D. Pa. 2008) cited by Defendant in support of its argument that its actions constitute "a recognized fixture of modern commercial transactions." (Defendant's Memorandum of Law, p. 14, fn. 5). In *Pentecostal Temple Church*, the parties' drafts and other communications showed that they were discussing the terms of their agreement over several months and that the plaintiff had the opportunity to read and understand the purchase order it signed and the terms incorporated therein by clear provision. *Id.* at *1, *4. Further, the defendant in that case made it clear to the plaintiff, long before the plaintiff entered into the agreement, that its terms and conditions were posted and available on its website. *Id.* Here, Plaintiffs had no opportunity to review the Terms and Conditions and the existence of such terms was hidden from them. (D'Elia Dec., ¶ 4; De Vito Dec., ¶ 8; Long Dec., ¶¶

5–13).

Because Plaintiffs were not provided with notice of the Terms and Conditions containing the forum selection clause, that clause is invalid and unenforceable.

   c. **Plaintiffs' NJCFA Claim Is Not Brought "Under" Nor Does It "Relate To" The Terms and Conditions And The Order Form; Thus, The Forum Selection Clause Does Not Apply**.

Even if the forum selection clause contained in the Terms and Conditions was enforceable (which plainly it is not), Plaintiffs' claim under the NJCFA falls outside the scope of the Terms and Conditions and Order Form. While "pleading alternate non-contractual theories is not alone enough to avoid a forum selection clause if the claims asserted arise out of the contractual relation and implicate the contract's terms," such is not the case here where Plaintiffs' tort claim is based on facts separate and apart from any purported contractual relationship and is brought pursuant to the NJCFA. *Crescent Intern, Inc. v. Avatar Communities, Inc.* 857 F.2d 943, 944 (3d Cir. 1988). Indeed, Plaintiffs' tort claim is brought under a statute specifically crafted by the New Jersey state legislature to provide recourse for consumers victimized by fraudulent business practices such as the Defendant's.

The Second Circuit, addressing the situation where the plaintiff's complaint contained, among others, contractual claims, tort claims arising under statute and state law unfair business practice claims, held that the forum selection clause in the parties' contract did not govern the plaintiff's statutory or state law unfair competition claims. *See Phillips v. Audio Active Ltd.*, 494 F. 3d 378, 391 (2d Cir. 2007) (holding that such claims do not arise out of the contract because the plaintiff has asserted no rights or duties under the contract; the only nexus between the proceedings and the contract arises when

the defendants raise their defenses).  While the language in *Phillips* was "arise out of" (and not "under" or "relating to"), the Court noted that when determining the applicability of a contractual provision to claims, courts should focus on factual allegations and examine the substance of such claims.  *Id.* at 388–389.

Here, the facts underlying Plaintiffs' NJCFA claim and its breach of contract claim are distinct; indeed they are the precise opposite.  The fundamental premise of the NJCFA claim is not to seek damages from or arising out of a contract but, rather, from a fraudulent scheme of misrepresentations and omissions that led the Class Member to enter into the contract.  Indeed, Plaintiffs argue that no contract exists.  As demonstrated in the FAC, the NJCFA claim is premised on, *inter alia*, Defendant's failure to provide sufficient notice, overreaching and actual and constructive fraud in inducing Plaintiffs to provide their assent to an incomplete and misleading Order Form.  (*See generally*, ¶¶ 126, 128–129).  Plaintiffs plead specific facts pertaining to their lack of notice of the Terms and Conditions and Defendant's misrepresentations in connection with the Plaintiffs' ability to review the terms of the deal before being bound.  (¶¶ 71, 81–89, 128).  Allegations in the FAC further make plain that the NJCFA claim is premised on threshold issues of contract formation.

Conversely, Plaintiffs' secondary cause of action for breach of contract is pled in the alternative only.  It states that, "[i]f the court finds a contract was formed, Defendant has breached the contract . . . (Emphasis added)."  (¶ 131; *see also* Defendant's Memorandum of Law, p. 6 (conceding that the breach of contract claim is pled in the alternative).  While Defendant argues that certain facts are alleged in support of both the NJCFA and the breach of contract claim, (Defendant's Memorandum of Law, p. 6), any

such over-lap is in connection with Defendant's misrepresentations. Consequently, in the sole case cited by Defendant supporting its "related-to" argument, the Third Circuit held that the plaintiff's tort claims fell within the scope of the parties' contract where the gravamen of the action sounded in contract — not where, as is the case here, the essence of the case sounds in tort. *Crescent Intern, Inc.* 857 F.2d at 944.

For the foregoing reasons, Plaintiff's NJCFA claim does not fall within the ambit of the Order Form and the Terms and Conditions.

### d. The Relevant Section 1404(a) Factors Weigh Heavily In Favor Of Denying Defendant's Motion To Transfer.

While Plaintiffs bear the burden of demonstrating the unenforceability of the forum selection clause, the heavy burden of demonstrating that the other elements of Section 1404(a) require transfer falls on Defendant. *Plum Tree, Inc., supra,* 488 F. 2d at 756–757. A decision to transfer is "not to be liberally granted." *Shutte v. Armco Steel Corp.,* 431 F. 2d 22, 25 (3d Cir. 1970) (finding district court's decision to transfer action an abuse of discretion and noting that the plaintiff's choice of a proper forum is a "paramount consideration . . . and that choice should not be lightly disturbed."); *Dibsie,* 2008 WL 2230658 at *6 (even where a valid forum selection clause exists, it operates only as a "substantial weight in favor of transfer that must be balanced along with the host of private and public considerations that courts take into account when ruling on §1404(a) motions.").

In this case, because all relevant private and public factors (save for Defendant's choice of forum) militate in favor of adjudicating this action in the United States District Court for the District of New Jersey, this is a substantial burden that Defendant cannot meet.

i. **The Relevant Private Interest Factors Support Denying Defendant's Motion To Transfer.**

It is uncontroverted that courts should afford "heavy weight to the plaintiff's choice of venue when the choice is plaintiff's home forum." *Cornish v. Morris Communication Co., LLC*, 2009 WL 3129387, *3 (D.N.J. 2009); *Calkins v. Dollarland, Inc.*, 117 F. Supp. 2d 421, 428 (D.N.J. 2000) (to overcome the presumption in favor of plaintiff's choice of forum, a defendant must produce "something more than a mere preponderance of the evidence" in favor of transfer). Here, because the New York forum selection clause is unenforceable, the New Jersey Plaintiffs' decision to prosecute this action in their home state is entitled to "heavy weight." *Cornish*, 2009 WL 3129387 at *3.

While Defendant has expressed its preference that this case be litigated in New York, that sole factor can hardly push Defendant over a modest threshold, much less the high one required here, and "unless the balance of convenience of the parties is *strongly* in favor of defendant, the plaintiff's choice of forum prevails." *Telebrands Direct Response Corp. v. Ovation Communications, Inc.*, 802 F. Supp. 1169, 1175 (D.N.J. 1992) (denying defendant's motion to transfer where the balance did not weigh strongly in defendant's favor). Tellingly, Defendant can cite to no inconvenience whatsoever it would suffer if forced to litigate this action in New Jersey. (Defendant's Memorandum of Law, p. 19); *Van Ommeren Bulk Shipping, B.V. v. Tagship, Inc.,* 821 F. Supp. 848, 850 (D. Conn. 1993) ("courts should generally 'not order a transfer which would merely switch the burden of inconvenience from one party to the other.'"). In light of the fact

that the Plaintiffs have selected their home forum and the balance of convenience is not strongly in Defendant's favor, Plaintiff's choice of forum should prevail.

It is indisputable that the overwhelming majority of the facts giving rise to this action occurred in New Jersey.   (*See* Defendant's Memorandum of Law, p. 18 ("Yellowpages.com does not dispute that many of the operative facts giving rise to claims of the named Plaintiffs occurred in New Jersey.").   Thus, the private factor of where the claims arose strongly lies in Plaintiffs' favor.   Defendant's attempt to draw a "connection" between Plaintiffs' claims and New York is unavailing.   Indeed, the only specific fact Defendant asserts in support of its position is that D'Elia is allegedly based in New York and uses New York facsimile and telephone lines to conduct business.[5] (Defendant's Memorandum of Law, p. 8).

Defendant's argument that it did not open a sales office in New Jersey until November 2008 should similarly be afforded no weight.   Prior to 2008, Defendant's salespersons came or called from its New York office into New Jersey to make every single sale relevant to this action.   Further, regardless of the date when Defendant opened its New Jersey office, Defendant states affirmatively that between June of 2006 and November of 2008, it conducted at least $9.6 million dollars worth of business (100% of the business relevant to this case during that period) in the State of New Jersey. (Defendant's Memorandum of Law, p. 9).

Finally, Defendant's reference to Plaintiffs' original complaint is irrelevant. (Defendant's Memorandum of Law, p. 8, 19).   The operative complaint in this action is the FAC, filed in this Court on November 6, 2009.   The FAC pleads a claim on behalf of

---

[5]    While Gidro may have sent a facsimile to or called D'Elia, any such communications originated from Gidro's office in New Jersey.

a class consisting of "all persons or entities in the State of New Jersey that allegedly contracted with Defendant for advertising services . . . . " (¶ 1). The fact that a separate class action suit has been filed by non-New Jersey plaintiffs — plaintiffs who are not members of the class sought to be certified in this action — in the United States District Court for the Southern District of California asserting claims under California law which are not asserted in this action, is also irrelevant to this motion. (*See* Defendant's Memorandum of Law, p. 19).

Defendant claims the remaining private factors, including the convenience of the parties and the location of books and records are not relevant.[6] With one exception, Plaintiffs agree. As to the convenience of the parties, Defendant routinely does business in New Jersey and would suffer less inconvenience if required to litigate in New Jersey than would Plaintiffs (who are individuals and New Jersey residents) if they were required to litigate in New York. Because of the proximity of the two districts, this is not a major issue, however, and Plaintiffs do not contend the inconvenience is great.

The close geographic proximity of the District of New Jersey to the Southern District of New York is relevant for another reason, however, and is a further reason not to grant transfer. As the Third Circuit has observed, "some courts have refused to apply this multi-factored balancing test where the transfer requested involves a forum which is a relatively short distance from the original forum. Instead, such courts have simply refused to consider transfer, arguing that the statute was not intended for these types of

---

[6] Because Defendant concedes that these private factors are not relevant, the Declaration of Jason Boehret submitted in support of Defendant's motion purporting to identify the residences of various witnesses should be afforded no consideration. (Defendant's Memorandum of Law, p. 20; Declaration of Jason Boehret ("Boehret Dec."), ¶¶ 4–6 and 8).

transfers, and some commentators have agreed." *See* 15 WRIGHT, MILLER & COOPER § 3854, at 470 (citing cases).

      ii.  **The Relevant Public Interest Factors Sway Decisively In Favor Of Denying Defendant's Request To Transfer This Action.**

The public interests also weigh heavily in favor of denying transfer. Specifically, New Jersey has a well-articulated and strong public policy of protecting its citizens from deceptive marketplace practices. This public policy is codified in the NJCFA. *See e.g. Lettenmaier v. Lube Connection, Inc.*, 162 N.J. 134, 138–39, 741 A.2d 591, 593–94 (N.J. Sup. 1999); *Cox*, 138 N.J. at 14; *see also Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 604, 691 A.2d 350, 364 (N.J. Sup. 1997) ("[t]he history of the Consumer Fraud Act is one of constant expansion of consumer protection.").

There is a significant danger that important public policy would be undermined by the wholly unjustifiable, and indeed bizarre, result of the application of New York's consumer protection laws (which provide far fewer remedies for plaintiffs than does New Jersey's) to transactions occurring in the State of New Jersey harming New Jersey residents. Among the differences between the New York and New Jersey statutes are the award of treble damages and attorney's fees, which are discretionary under the former and mandatory under the latter, and the award of costs, which is available in New Jersey but not in New York." *See Watts v. Jackson Hewitt Tax Service Inc. et al.*, 579 F. Supp. 2d 334, 345 (E.D.N.Y. 2008).

Additionally, the New York statute drastically limits protection afforded to business people such as the Plaintiffs in this action. *See Cruz v. NYNEX Information Resources*, 263 A.D.2d 285, 290, 703 N.Y.S. 2d 103 (N.Y. App. Div. (1st Dept.) 2000) (dismissing

complaint brought by business persons who purchased advertisements in Bell Atlantic's Yellow Pages, noting "[t]he statute's consumer orientation does not preclude its application to disputes between businesses per se, but it does severely limit it."). In contrast, the NJCFA is widely available to business people and entities, focusing on the "character of the transaction" and not on the identity of the consumer. *Viking Yacht Co. v. Composites One LLC,* 496 F. Supp. 2d 462, 474 (D.N.J. 2007)

While Plaintiffs do not concede that the transfer of this case to the Southern District of New York would justify the invocation of New York state law to transactions occurring in the State of New Jersey and involving New Jersey residents, they are mindful of the fact that the same section of Defendant's Terms and Conditions that contains the forum selection clause also includes a choice of laws provision requiring the application of the laws of the State of New York to the construction of the terms of the agreement. The Terms and Conditions states in relevant part: "[t]his Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York applicable to contracts entered into and performed in New York." (*See* D'Elia Dec., Exs. A and B). The scope of this clause is narrow and purports to apply only to the "Agreement" and its construction and enforcement and, as a result, should not reach Plaintiffs' NJCFA claims.

Moreover, generally, "tort claims are outside the scope of contractual choice-of-law provisions that specify what law governs construction of the terms of the contract . . . ." *Finance One Public Co. Ltd. v. Lehman Bros. Spec. Financing, Inc.,* 414 F. 3d 325, 335 (2d Cir. 2005); *see also Palladin Partners v. Gaon,* 2006 WL 2460650, *16 (D.N.J. 2006) (where the clause limited itself to issues relating to contract itself, court found New

York choice of law clause did not apply to plaintiff's tort claims and that application of New Jersey state law was appropriate).  Nonetheless, a justifiable concern exists that Defendant will seek to apply the choice of laws clause as an extension of a ruling transferring this case to the Southern District of New York pursuant to the forum selection clause.  The potential for such an argument and a resultant application of New York law rather than the NJCFA provides a significant further basis to deny transfer.  *See e.g. Dibsie, supra,* 2008 WL 2230658 at *5 (refusing to transfer action involving NJCFA claim where "vast majority of the public interests" indicated case should not be transferred); c.f. *Muhammad v. County Bank of Rehoboth Beach, Delaware,* 189 N.J. 1, 912 A.2d 88 (N.J. Sup. 2006) (in a lawsuit brought pursuant to the NJCFA, class-action arbitration waiver was found to be invalid because it violated New Jersey public policy).

In its Memorandum of Law in support of transfer, Defendant makes the unsubstantiated and incorrect assertion that enforcing the forum selection clause would not violate New Jersey's public policy because "numerous federal and state courts sitting in New Jersey . . . have enforced forum selection clauses as to CFA claims . . . . " (Defendant's Memorandum of Law, p. 16).  In support of its argument, Defendant cites to *Mathews v. Rescuecom Corporation,* 2006 WL 414096 (D.N.J. 2006), *Double J. Enterprise, Incorporated v. V&H, Incorporated*, 2007 WL 1541980 (N.J. Super. A.D. 2007) and *Hallowell v. Blue Haven Pools National Incorporated*, 2005 WL 2648870 (N.J. Super A.D. 2005).  These cases, however, are entirely distinguishable on their facts.

First, the *Mathews* court never addressed the public policy aspect of enforcing a venue selection clause in the context of a NJCFA claim and appears to have transferred the action due to the presence of a pre-existing case in the transferee court, based on the

same operative facts. *Mathews*, 2006 WL 414096 at *7–8. Similarly, the plaintiff in *Double J. Enterprise* did not contend that the disputed contract clause violated public policy; rather, the only challenge raised by the plaintiff was whether venue was exclusive in Wisconsin. *Id.* at *3. Significantly, the opinion in *Double J. Enterprise* is unpublished and, therefore, of no precedential value. *N.J. Court Rule* 1:36–3. Finally, while the court in *Hallowell* — like *Double J. Enterprise* an unpublished opinion and of no precedential value — transferred the action containing a consumer fraud claim, the court's brief decision provides scant analysis regarding the interplay between the NJCFA and New Jersey public policy. For the reasons set forth above, both the local interests in deciding local controversies at home and the public policies of the fora weigh strongly in favor of adjudicating this action in the above-entitled Court.

Further, practical considerations will make trial more complicated, less expeditions and more expensive in the Southern District of New York. Courts have recognized that the mere act of transferring a case necessarily results in delay, especially where pre-trial tasks have already been completed, adds additional expense, and thus weighs in favor of denying a motion to transfer. *Dibsie*, *supra*, 2008 WL 2230658 at *8 (fn. 6); *Hodgson v. Gilmartin*, 2006 WL 2707397, *16 (E.D. Pa. 2006). Here, this case is moving forward in the New Jersey District Court. The parties' Rule 26(f) conference has taken place, a pretrial scheduling conference was held before Judge Salas, a Pretrial Scheduling Order was subsequently issued by Her Honor on December 11, 2009, initial disclosures have been provided by both parties, and discovery has commenced with both parties having exchanged written discovery. Thus, transfer will necessarily result in significant delay in a matter that is well under way before a court entirely familiar with it.

Such delay and the probability of repeating tasks already completed in this Court, will of necessity, increase the parties' cost.

Finally, the factor of the familiarity of the forum judge with applicable state law weighs in favor of Plaintiffs. New Jersey district court judges deal frequently with NJCFA issues. *Dibsie, supra*, 2008 WL 2230658 at *8 ("While federal district courts are frequently called upon to interpret the laws of jurisdictions outside of the states in which they sit, *Jumara's* express reference to a trial court's familiarity with local law highlights the considerations of judicial economy that underlie the public interest factors that figure into the Court's § 1404(a) analysis."). This is particularly significant in matters such as this where the elements and scope of the NJCFA differ so significantly from those of New York's consumer protection laws.

Since all public interest factors relevant to this litigation weigh in favor of adjudicating this case in New Jersey and the relevant private interest factors are similarly weighted heavily in favor of the Plaintiffs, Defendant cannot meet its heavy burden of proving that transfer is appropriate. Thus, Defendant's motion to transfer should be denied.

## IV.    CONCLUSION

For the reasons set forth in detail above, Defendant's motion to transfer this action to the United States Federal Court for the Southern District of New York should be denied.


Date:   March 1, 2010                    By:   **s/Peter S. Pearlman**
        Saddle Brook, New Jersey               Peter S. Pearlman, Esq.
                                               **COHN LIFLAND PEARLMAN**
                                               **HERRMANN & KNOPF LLP**
                                               Park 80 Plaza West – One
                                               Saddle Brook, NJ 07663
                                               (201) 845-9600
                                               (201) 845-9423 (fax)
                                               psp@njlawfirm.com


Date:   March 1, 2010                    By:   **s/Paul I. Perkins**
        Paramus, New Jersey                    Paul I. Perkins, Esq.
                                               **LYNCH LAW FIRM, P.C.**
                                               45 Eisenhower Drive
                                               Paramus, NJ  07652
                                               (800) 656-9529
                                               (888) 271-9726 (fax)
                                               paulperkins@lynchlawyers.com